IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TOREY VAUGHN PETERSON,      )
      )
      Petitioner      )
      )
    vs.      )      Civil Action No. 07-947
      )      Magistrate Judge Amy Reynolds Hay
MARK A. KRYSEVIG; DISTRICT      )
ATTORNEY OF FAYETTE COUNTY,      )
PENNSYLVANIA; PA STATE      )
ATTORNEY GENERAL,      )
      )
      Respondents    )

## **MEMORANDUM OPINION AND ORDER**

HAY, Magistrate Judge

In the Court of Common Pleas of Fayette County, Torey Peterson ('Petitioner) was

convicted of first degree murder in a jury trial for the January 11, 2002 shooting death of Mr.

William Mason.  Petitioner has filed this habeas petition pursuant to 28 U.S.C. §2254, seeking

relief from that conviction.  Because none of the claims merits relief, the petition will be denied.

The facts of the crime, and some of the evidence offered at trial, as described by the trial

court in its opinion in response to Petitioner's direct appeal, are as follows:

> At 3 a.m. on January 11, 2002, the Victim, William Mason and his friend,
> Timothy Martisko, left a birthday party and drove to Hunter's Ridge housing
> project. N.T. 12/08/03, at 78.  Leaving the Victim, who was ill from alcohol
> consumption, in the vehicle, Martisko entered the apartment of an individual
> named Larry. *Id.*, at 79-80.   Apparently, in an attempt to locate his friend, the
> Victim entered the wrong apartment, an apartment where the Defendant was
> spending the night.  *Id.*, at 124.  Just over an hour later, Officer Dennis Field of
> the Redstone Township Police Department was called to the apartment to
> investigate a shooting which had occurred in the apartment. *Id.*, at 16.  After he
> entered th apartment, the Officer observed the Victim, lying on the floor in a pool
> of blood. *Id.*, at 18.  Shortly thereafter, the Officer received a call and learned that

the Defendant was in a nearby apartment. *Id.* As the Officer approached the apartment, the Defendant came out with his hands up and said to the Officer ". . . you got me this time. Come on Denny, man, help me. You help me with this and I will tell you everything you ever wanted to know...."? The Defendant was then secured and placed in a police vehicle. *Id.*

The Defendant consented to speak with the Pennsylvania State Police and, in a statement presented by the Commonwealth, the Defendant stated that the white guy came in, started screaming, and the Defendant blacked out. *Id.*, at 114. He then heard the shot, the apartment was ringing and, although his eyes were open, he could not see anything. *Id.*, at 116. He also stated that he was not sure whether he shot the white guy. *Id.*

Later that day, in a second interview with the Pennsylvania State Police, the Defendant gave another statement, one that was quite different from his first statement. In his second statement, the Defendant said that a white drunk man [the Victim] walked into the apartment and started saying he was there with TJ. *Id.*, at 123. According to the Defendant, after a short exchange of words between him and the Victim, the two started pushing and grabbing each other until the Victim pulled out a handgun that was hidden in his pants. *Id.*, at 125-28. The Defendant also said that as they struggled to gain control over the weapon, and while they each held the gun, a shot was fired and the Victim fell. *Id.* However the Defendant did not remember how he exactly held the gun because he blacked out, *Id.*, at 131, remembering only that once the shot was fired, the gun fell out of his hand. *Id.*, at 136. After the shooting he took the weapon and disposed of it in the woods behind the apartment. *Id.*, at 137-41. The weapon was later recovered at the location given by the Defendant. *Id.*, at 91.

As to the issue of who held the weapon at the time the shot was fired, John Evans, a forensic scientist II, testified that with regard as to whether the Victim held the weapon at the time that the fatal shot was fired, the tests he performed showed no signs of gunshot primer residue on the hands of the Victim. N.T. 12/09/03, at 237.

Darius Johnson, a friend of the Defendant who was present in the apartment at the time of the shooting, testified that when the Victim walked into the apartment he sounded stoned and mumbled but did not threaten anyone. *Id.*, at 61. Johnson also testified that he did not see a handgun on the Victim. *Id.* Johnson then went into the kitchen and, after hearing a gun shot he left the kitchen and saw the Defendant holding a silver handgun with a black handle. *Id.*, at 62. He also testified that, at some time prior to the shooting he had seen the Defendant with a similar handgun in his possession. *Id.*, at 64.

The handgun at issue was identified by Kimberly Faye Iacaponi who testified that six (6) months prior to the shooting she sold the murder weapon, which she had stolen from her boyfriend, Mark Ochkie, to an individual in Hunter's Ridge. N.T., 12/09/03, at 169-71. A record check of the murder weapon by Trooper Donald Lucas revealed that it was registered to Mark Ochkie who had

reported it stolen some six months prior to the shooting. *Id.*, at 180-81.

        Clarence Leon Clemmons, another friend of the Defendant, testified that while he was asleep in the apartment, he heard talking and shuffling followed by the sound of a gun being fired. N.T., 12/08/03, at 46-45[sic]. Awakening, he saw the Victim fall to the floor and the Defendant standing over top of him with a gun in his hand. *Id.*, at 46. The gun "was silver with like a black handle." *Id.*, at 47.

        The Commonwealth also produced two photographs depicting the crime scene, Commonwealth Exhibits 7 and 8. While the photographs show the Victim lying on the floor, the room appears to be in perfect order with no signs of recent struggle. Further, Officer Field testified that when he first arrived at the scene, "[t]he apartment wasn't in any kind of a disarray" and "[n]othing was knocked over." *Id.*, at 21.

        The Coroner of Allegheny County, Doctor Cyril Wecht, testified that the autopsy results showed no injuries on the victim other than a single gunshot wound to the head. N.T., 12/09/03, at 253. According to Dr. Wecht's testimony, the bullet was fired from point blank range no further than 1 ½ inches from the Victim's head, and the wound was located on the right temporal area (the sideburn area). *Id.*, at 245-49. Additionally, trajectory of the bullet had no upward or downward deviation and it went slightly from font toward the back of the Victim's head. *Id.*, at 250.

        During the autopsy, a slug was recovered and turned over to the Pennsylvania State Police. Jack Wall, a forensic firearm and tool mark examiner, testified, that, after proper testing, he was able to conclude that the slug recovered from the body of the Victim was fired from the murder weapon. *Id.*, at 226-28.

Dkt. [14-3] at 6 to 11.

Defendant took the stand and testified in his own behalf and he testified that he was acting in self defense. Dkt. [18] at 10 to 11, ¶ 5. The jury, apparently disbelieving Petitioner's version of the events, found Petitioner guilty of first degree murder. As a consequence, Petitioner was sentenced to life in prison.

In his direct appeal to the Superior Court, Petitioner raised the following issues:

      1. WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE AND THE LAW SINCE THE COMMONWEALTH DID NOT ESTABLISH PREMEDITATION AND WHETHER THE EVIDENCE WAS OTHERWISE INSUFFICIENT TO SUSTAIN THE VERDICT AS THE COMMONWEALTH FAILED TO PROVE THE CHARGE AGAINST

APPELLANT BEYOND A REASONABLE DOUBT?

    2. WETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE AND THE LAW SINCE THE COMMONWEALTH DID NOT ESTABLISH THAT APPELLANT, IF HE DID NOT ACT IN JUSTIFIABLE SELF-DEFENSE, THAT THE APPELLANT ACTED UNDER SUDDEN AND INTENSE PASSION RESULTING FROM SERIOUS PROVOCATION FROM THE VICTIM AND THE DEGREE OF CRIMINAL HOMICIDE ONLY ROSE TO THE LEVEL OF VOLUNTARY MANSLAUGHTER AND NOT TO THE LEVEL OF FIRST DEGREE?

    3. WHETHER THE COURT IMPROPERLY ADMITTED EVIDENCE THAT A GUN THAT APPEARED TO BE THE SAME GUN USED IN THE INCIDENT WAS SEEN IN THE HUNTER'S RIDGE HOUSING PROJECT SIX (6) MONTHS BEFORE THE INCIDENT?

    4. WHETHER THE COURT IMPROPERLY ADMITTED CE7 [i.e., Commonwealth Exhibit 7] AND CE8 [both of which were photographs of the victim's body but not showing the head and showing part of the room] WHICH DEPICTED PHOTOS OF THE VICTIM'S DEAD BODY IN THE APARTMENT?

    5. WHETHER THE COURT ERRED IN NOT GRANTING A MISTRIAL WHEN THE PROSECUTOR QUESTIONED A CHARACTER WITNESS WHETHER THE VICTIM (MASON) HAD A REPUTATION OF CARRYING A GUN?

    6. WHETHER APPELLANT'S OMNIBUS PRE-TRIAL MOTION TO SUPPRESS STATEMENTS AND EVIDENCE SHOULD HAVE BEEN GRANTED.

Dkt. [14-3]. The trial court, in its opinion in response to the notice of appeal, addressed all of these issues on the merits, finding none of them meritorious. Dkt. [14-3] at 6 to 25. The Superior Court held that Issues 3 to 5 were completely waived and held that Issues 1 and 2 were waived to the extent that they raised a "weight of the evidence" argument but not waived to the extent that they raised a "sufficiency of the evidence" argument. This waiver occurred because trial counsel failed to file a post sentence motion challenging the weight of the evidence. Lastly, the Superior Court addressed Issue Number 6 on the merits. Dkt. [14-3] at 27 to 40. The Superior Court denied relief.

At trial and on direct appeal, Petitioner was represented by the same counsel, a member of the Fayette County Public Defender's office.

Eventually, Petitioner filed a PCRA petition and new counsel, who was not from the Fayette County Public Defender's Office, was appointed and he filed an amended PCRA petition. In that amended PCRA petition, the following issues were raised:

> (a) the ineffectiveness of trial and appellate counsel in the pursuit of his direct appeal from his judgment of sentence; . . . specifically:
>> (i) Trial/appellate counsel was ineffective for failing to timely file a post-sentence motion challenging the verdict being against the weight of the evidence; thus failing to properly preserve his weight challenges for direct appeal and causing the Pennsylvania Superior Court to find that this issue was waived;
>> (ii) Appellate counsel was ineffective for failing to properly brief the issues raised on appeal, i.e., not citing to the Pennsylvania Rules of Evidence, Pennsylvania Rules of Criminal Procedures, any caselaw or any other pertinent authority to support the issues raised on appeal. As a result, the Pennsylvania Superior Court found that four (4) of the six (6) issues raised on appeal to be waived.[1]
>> (iii) Appellate Counsel was ineffective for failing to make sure that the record forwarded to the Pennsylvania Superior Court contained those documents necessary to allow a complete and judicious assessment of the issues raised on appeal which resulted in the Pennsylvania Superior Court finding that one of the defendant's issues raised on direct appeal to be waived....

Dkt. [14-4] at 3 to 4. The PCRA court conducted an evidentiary hearing and thereafter denied relief. Dkt. [14-7] at 1 to 12.

Petitioner appealed through counsel. In his appeal to the Superior Court, Petitioner raised

---

[1] Apparently, the four issues referenced as waived were issues 2 to 5. However, in fact, Issue One was waived to the extent that it raised a challenge to the weight of the evidence but not to the extent issue one raised a challenge to the sufficiency of the evidence. See Dkt. [14-3] at 36 ("Consequently, Peterson has failed to properly preserve his weight challenges for direct appeal and his second question is waived. We now proceed to the merits of Peterson's first question **to the extent that it challenges the sufficiency of the evidence**.")(emphasis added).

the following issues in his counseled brief:

> I. Whether the PCRA Court erred in denying relief requested . . . based upon claims of ineffective assistance of trial and appellate counsel?
>> A. Whether the PCRA court erred in not finding trial counsel ineffective for failing to file a post[-]sentence Motion challenging the verdict [as] being against the weight of the evidence?
>> B. Whether the PCRA court erred in not finding appellate counsel ineffective for failing to properly brief the issues raised on direct appeal?
>> C. Whether the PCRA court erred in not finding appellate counsel ineffective for failing to ensure that the record forwarded to the Pennsylvania Superior Court was complete on direct appeal?

Dkt. [3] at 24 to 25.

In addition to the issues raised on appeal in the counseled appellate brief, Petitioner filed, pro se, an application for remand for the appointment of new PCRA counsel. Dkt. [3] at 25; Dkt. [18]. The Superior Court referred the uncounseled application to Petitioner's PCRA counsel.

Thereafter, Petitioner's PCRA counsel then filed a counseled application for remand for the appointment of new PCRA counsel and raised the following issues in that application wherein the PCRA counsel argued his own ineffectiveness:

> (a) Present counsel was ineffective in not addressing the issue of "whether the verdict was against the weight of the evidence and the law since the Commonwealth did not establish that, [Peterson], if he did not act in justifiable self-defense[,] then he acted under a sudden and intense passion resulting from serious provocation from the victim and the degree of criminal homicide only rose to the level of voluntary manslaughter and not the level of first degree murder";

> (b) Present counsel was ineffective for not properly arguing the merits of the underlying issue of premeditation; as it pertains to the weight of the evidence;

> (a)[sic] Present counsel was ineffective for not raising issues that [Peterson] wished to be raised in his amended PCRA petition: and

> (b)[sic] Present counsel was ineffective for not challenging the verdict being

against the weight of the evidence concerning malice and only challenging the weight of the evidence concerning premeditation.

Dkt. [3] at 26.   The Superior Court denied all relief.  Id., at 23 to 36.

Petitioner then filed the instant pro se habeas petition.  Dkt. [3].     The following issues are raised in the current habeas petition.

> GROUND ONE: Ineffective assistance of trial/appellate counsel that violated Petitioner's sixth and fourteenth  amendment rights . . . .[because] [f]our of six issues raised on direct appeal were waived due to counsel's failure to include/cite Pennsylvania Rules of Evidence, Pennsylvania Rules of Criminal Procedure, or any case law, counsel also failed to indicate where in the certified record  photo evidence in question was located. Lastly, counsel failed to file requested post trial motions which would have preserved weight of the evidence challenges.  Above mentioned errors led to an incomplete and unfair review of appellant's claims.
>
>          . . . .
>
> GROUND TWO: Violation of due process and equal protection rights of the 14th Amendment by repeated reference to the victim as "the white boy." . . .  [The Trial] Court allowed the victim to be referred to as the white boy more than 35 times during trial.  The victim was white, defense attorney was white, prosecutor's [sic]  were white, Judge was white, jury pool was all white, and all jurors selected were white.  At time of trial defendant was a 23 year old black man.  The unfair references and conditions may have employed racial prejudice.  Fayette County is a County of mixed race, yet no black jurors were available in petitioner's jury pool.. . . .
>
>          . . . .
>
> GROUND THREE: Prosecutorial misconduct that violated petitioner's due process rights set forth in  the 14th Amend. of the United States Constitution. . . . .  Prosecution put forth a contradictory case pertaining to whether a physical altercation took place or not.  Used testimony known to be perjured.  Darius Johnson gave 4 wholly different statements and testimonies prior to trial.  Twice during closing arguments prosecutor lied by stating defendant admitted living where weapon was sold (see Trial T. 343 +348).  Those false facts were not in evidence.  In fact, Petitioner did not live at the Hunter's Ridge project and was only there that night visiting cousins from out of town.

. . . .

GROUND FOUR: Violation of Sixth Amendment right to a speedy trial. . . . Petitioner was arrested on January 11, 2002 and went to trial Dec. 8, 2003. Judge informed defense and prosecution that case expired Sept. 23, 2003 (see docket entry on 8-18-03 of continuance proceedings for 7-30-03).

. . . .

GROUND FIVE: Violation of 6th Amendment right to effective assistance of counsel and violation of 14th Amendment rights of due process and equal protection. . . .
Trial counsel failed to interview and use known material and character witnesses that were willing to testify. Sophia Bell was the resident of occupancy where shooting took place. Miss Bell gave exculpatory statement to police that would have bolstered petitioner's self defense defense. In her statement she stated that while she was upstairs she heard a voice say let's take this outside, and that she heard petitioner yell for help. All of which is consistent with the fact that an altercation occurred and not a malicious killing. Petitioner was the only witness to be called to his defense. Trial Counsel failed to call Brooke Woods to the stand as a character witness and material witness. Miss Woods alleges that she attempted to contact trial counsel on numerous occasions but was always unsuccessful in getting her telephone calls returned. Miss Woods and petitioner had sex shortly before incident occurred and petition did not have a gun. She would have testified to the fact that petitioner was never seen by her with a gun. Trial Counsel failed to investigate evidence (brought forth in the formal discovery) that Commonwealth witness, Darius Johnson, was the owner of weapon used in incident. If those allegations were investigated and put before the jury, Mr. Johnson's motives for changing his statements and testifying for the prosecution would have [been brought] in[to] question.

. . . .

GROUND SIX: Violation of Equal protection and due process laws and rights of the 14th Amend. Of the U. S. Constitution. . . . . Trial court admitted evidence that was irrelevant to any material fact of the case. Trial Court allowed admissions of two photos (CE7 and CE8) which had no probative value. There is no way a person can infer that a struggle did not take place by looking at the photos in question. Victim's lifeless body was depicted.

Trial Court allowed irrelevant testimony by Kimberly Iacaponi. Ms. Iacaponi testified that she didn't know who the gun had been sold to. Furthermore, her testimony of the gun being sold at the Hunter's Ridge project could not raise the probability of the defendant to have had the gun. Mr. Perterson

never lived in Hunter's Ridge (as prosecutor stated to jury that he did) and the victim did not as well. In fact, Mr. Marlisko [sic] (victim's companion) told police that he used to buy drugs at the housing project.

Dkt. [3] at 5 to 15. The Respondents filed an answer. Dkt. [14]. Petitioner filed a traverse to the answer. Dkt. [18].

**Applicable Legal Rules**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was enacted on April 24, 1996. Because petitioner's habeas petition was filed after AEDPA's effective date, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

A judgment of conviction carries with it a presumption of regularity in federal court. Meyers v. Gillis, 93 F.3d 1147, 1151 (3d Cir. 1996)("On collateral attack. . . ., the state receives the presumption of regularity and all reasonable inferences.")(quoting Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993)); Sandoval v. Tinsley, 338 F.2d 48, 50 (10th Cir. 1964); Schlette v. California, 284 F.2d 827, 833-34 (9th Cir. 1960)("A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused."). Given this presumption of regularity, it is petitioner's burden to establish, at the very least by a

preponderance of the evidence,[2] that his constitutional rights were violated. Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997)("On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated.").

A state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the United States Constitution or federal law. 28 U.S.C. §2254(a). Smith v. Phillips, 455 U.S. 209 (1982); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir. 1991). Violations of state law or state procedural rules alone are not sufficient; a petitioner must allege a deprivation of federal rights before habeas relief may be granted. Engle v. Isaac, 456 U.S. 107 (1982).

### AEDPA's Standard of Review

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e). Section 2254 (d) and (e) provide as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] To the extent that petitioner is challenging the factual determinations of the State Courts, he has a burden to rebut the presumption of correctness of those factual findings by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1).

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Moreover, it is petitioner's burden to prove the state courts' disposition of a federal claim is either contrary to or an unreasonable application of clearly established federal law. See Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 - 89 (3d Cir. 1999)(en banc).

**Discussion**

Given that it is Petitioner's burden to establish that the state courts' adjudication of his claims was contrary to or an unreasonable application of extant Supreme Court precedent and he has failed to cite a single case, let alone argue that the state courts' adjudication constituted such, he has failed to carry his burden to merit relief. For this reason alone, his petition should be denied.

Nevertheless, after independent review of those claims that the state courts addressed on the merits, this Court concludes that the state courts' disposition of Petitioner's claims did not constitute dispositions that were either contrary to or an unreasonable application of then extant Supreme Court precedent nor did those state court decisions make an unreasonable determination of the facts.

Ground One was addressed in part on the merits by the PCRA trial court. Findings of Fact, Opinion and Order. Dkt. [14-7] at 1 to 12. Essentially, the PCRA court found that the issues of Petitioner's trial/appellate counsel's ineffectiveness for failure to file post trial motions in order to preserve the 2 weight of the evidence claims meritless because the verdict was not against the weight of the evidence when that evidence was viewed in a light most favorable to the

Commonwealth as the verdict winner. Hence, the PCRA court concluded that Petitioner's trial/appellate counsel could not have been ineffective for failing to raise meritless weight of the evidence claims. The Superior Court agreed and held that "[b]ecause Peterson's challenge to the weight of the evidence is without arguable merit, Petitioner's ineffectiveness claim on this basis must fail." Dkt. [3] at 31. Such a disposition is not contrary to or an unreasonable application of Supreme Court precedent on ineffectiveness. See, e.g., Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000) ("counsel cannot be deemed ineffective for failing to raise a meritless claim").

As to any other claims of ineffectiveness of trial/appellate counsel, the PCRA court noted that Plaintiff was provided a hearing on his PCRA petition and that it was Petitioner's burden at the hearing to establish ineffectiveness. The PCRA court concluded that "[a]lthough he was given a full hearing with regard to his Post-Conviction Relief Act petition, the Defendant failed to sustain his burden as to either prong [of the ineffectiveness standard]. He offered no testimony that the claim was of arguable merit or that there is a reasonable probability that the outcome of the proceedings would have been different." Dkt. [14-7] at 10. Petitioner in his traverse counters that "it is clear that petitioner entered evidence and testified as to how he was prejudiced by trial/appellate counsel's failures. . . ." Dkt. [18]. Given that the PCRA trial court was the trier of fact as well as of law,[3] we understand the PCRA Court's statement that Petitioner "offered no testimony that the claim was of arguable merit or that there is a reasonable

---

[3] See Commonwealth v. Puksar, 951 A.2d 267, 279 (Pa. 2008)("Although Mrs. Puksar disputed counsel on this point at the PCRA hearing, it was for the PCRA court to determine if trial counsel's testimony was more credible."); Commonwealth v. Washington, 927 A.2d 586, 597 (Pa. 2007) ("We remanded for a hearing at which the subject could be heard, noting that the PCRA court as factfinder is the appropriate entity to assess the credibility of the prospective testimony as reflected in the post-trial declaration.").

probability that the outcome of the proceedings would have been different" to mean that Petitioner presented no **credible** evidence of such and hence, he failed to sustain his burden of persuasion in the PCRA trial court. We find this conclusion to be neither contrary to or an unreasonable application of Supreme Court precedent nor an unreasonable determination of the fact of credibility, to the extent that such credibility determinations are even reviewable herein.

The last issue of ineffectiveness addressed by the PCRA court was the claim that Petitioner's appellate counsel was ineffective for failing to assure that the record sent to the Superior Court was adequate so as to insure the Superior Court could review Commonwealth Exhibits 7 and 8, which were photographs of the victim's body only, i.e., the victim's head was not shown, as well as the area of the room around the body. It was Petitioner's contention in the state courts and herein that the Trial Court erred in admitting those photos. The PCRA Court found that "[a]s to this issue, the Defendant failed to offer any testimony. Thus this issue is deemed waived." Dkt. [14-7] at 10 to 11. Although the PCRA court spoke in terms of waiver, the PCRA court's finding of fact that Petitioner failed to offer any evidence regarding this issue, establishes not so much waiver as much as a failure to carry his burden to establish trial/appellate counsel's ineffectiveness. We find that Petitioner's failure in this regard to be dispositive of his claim. His failure to establish appellate counsel's ineffectiveness, i.e., failure to establish either unreasonableness or prejudice, when he was provided the opportunity to do so given he received an evidentiary hearing, precludes him from obtaining relief in this court. His failure of proof in state court redounds to his detriment in these federal habeas proceedings.

The Superior Court on appeal from the PCRA court, affirmed the PCRA court's reasoning. Dkt. [3] at 34. In the alternative, the Superior Court adopted the reasoning, which the

trial court utilized in its opinion in support of the jury verdict, namely, that the photographs were properly admitted because they were relevant to establishing that the area around the body showed no signs of a struggle as Petitioner had contended occurred. Essentially, the Superior Court found Petitioner's direct appellate counsel not ineffective for failing to assure the record on appeal included the two photographs identifiable as CE7 and CE8 because there was no merit to the claim that the photos were inadmissible. Dkt. [3] at 34 ("we would conclude that it [i.e., the claim of appellate counsel's ineffectiveness for failing to preserve the admissibility of the photos issue] lacks arguable merit for the reasons set forth in the trial court's March 23, 2004 Opinion in support of the verdict."). This disposition is not contrary to or an unreasonable application of Supreme Court precedent.

As to Ground Two, i.e., violations of due process and equal protection based upon references to the victim as "the white boy," this claim was waived insofar as the above recounted history of issues raised in state court on direct appeal show that this claim was **never** raised in the direct appeal proceedings. Nor was this issue raised in the amended PCRA petition filed by PCRA counsel. Hence, this precise issue was waived in the state courts and, thus,procedurally defaulted for purposes of habeas review. The only way such a claim would be properly cognizable now is via a claim of ineffective assistance of PCRA Counsel for failing to raise, in the amended PCRA petition, the ineffectiveness of trial/direct appeal counsel for failure to raise this precise issue of the "white boy" statements. In fact, this is the exact way in which the issue was presented in the state courts during the PCRA appeal proceedings, where Petitioner's PCRA counsel filed a counseled application for remand. See Dkt. [3] at 26 (issue erroneously designated as the second subissue "a") & at 35. While the ineffectiveness of PCRA counsel for

14

failing to raise the issue of trial/direct appeal counsel's failure to raise the "white boy" comments issue may itself not have been waived, (since it was raised in the state courts) the fact that such issue of PCRA counsel's ineffectiveness is not waived provides Petitioner no comfort because even if the Court could consider the issue of PCRA counsel's ineffectiveness, given that it may not have been procedurally defaulted, the issue itself provides Petitioner no ground for relief in federal habeas corpus proceedings.

It does not matter for the purposes of deciding this issue whether PCRA counsel was ineffective, although it is doubtful that he was. This is so because, even if we assumed PCRA counsel was ineffective, the ineffectiveness of PCRA counsel simply does not provide a ground for relief in federal habeas proceedings, as such ineffectiveness implicates no federal constitutional right given that Petitioner had no federal constitutional right to counsel at that stage in the proceedings. Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.")(citations omitted). There is no substantive due process or equal protection right to counsel in state post conviction proceedings. Jacobs v. McDaniel, 139 F.3d 905 (Table); 1998 WL 78440, at *1 (9th Cir. 1998)("Jacobs' claim that he was denied due process because the state habeas court refused to appoint counsel at the evidentiary hearing fails for lack of a right to counsel in state collateral proceedings."); Gibson v. Public Advocacy Dept., 35 F.3d 565 (Table), 1994 WL 462160, at *2 (6th Cir. 1994)("Similarly, neither the Due Process Clause of the Fourteenth Amendment nor the equal protection guarantee of 'meaningful access' to the courts requires the defendants to appoint counsel for Gibson [in state post conviction proceedings]. See Murray v. Giarratano, 492 U.S. 1,

7 (1989). Thus, it is beyond a doubt that Gibson has no federal constitutional right to counsel...."); Pursell v. Horn, 187 F.Supp.2d 260, 373 (W.D. Pa. 2002)(holding in a death penalty case that "the due process clause does not require counsel for state post-conviction proceedings, whether state law requires such counsel or not."). Accordingly, the only way this issue can be properly presented to this court, i.e., via a claim of ineffectiveness of PCRA counsel, simply provides no basis for relief.

We next consider Ground Three, wherein Petitioner claims that the prosecutor engaged in prosecutorial misconduct when the prosecutor stated in closing arguments that Petitioner lived at the Hunter's Ridge Projects and when the prosecutor knowingly (according to Petitioner) presented false evidence from Darius Johnson, who gave four different stories to the police. Again these issues were not raised any time during direct appeal, nor were they raised in the PCRA amended petition. Hence, the above reasoning applies here as well, namely that the only proper method for this issue to be raised herein is via a claim that Petitioner's PCRA counsel was ineffective for failing to raise in the amended PCRA petition, the ineffectiveness of trial/appellate counsel for that counsel's failure to raise the issue of prosecutorial misconduct. Given the direct issue of prosecutorial misconduct is procedurally defaulted, and given that the only non-defaulted way for this claim to be raised is via ineffective assistance of PCRA counsel and such fails to afford a ground for relief, this claim should be denied.

Ground Four is a claim that his speedy trial rights under the Constitution were violated. This issue was never raised in the state courts during the direct appeal process by counsel. Nor was this issue raised in the amended PCRA petition. Hence the foregoing reasoning equally applies to this claim.

Alternatively, to the extent that this issue was raised at all, and the only evidence Petitioner points to as supporting the fact that the issue was raised is in a letter addressed to his trial counsel,[4] the issue was raised solely as one of state law and not of constitutional law, i.e., a violation of Pennsylvania Rules of Criminal Procedure 600 and not of the United States Constitution. Such a claimed violation of state rules of criminal procedure fails to state a claim cognizable in federal habeas proceedings. See, e.g., Williams v. City of Philadelphia, NO. CIV.A. 86-1670, 1986 WL 4828, *1 (E.D. Pa. April 21, 1986) ("[F]ailure to follow Rule 1100 [i.e., the predecessor of Rule 600[5]] violates neither the Eighth Amendment nor any other constitutional guarantee."). The holding of Williams is directly on point and should control here. See also Kent v. Pennsylvania, NO. CIV.A.04-1764, 2004 WL 2406690, at *3 (E.D.Pa. Oct. 21, 2004)("Rule 1100 is a state procedural rule that entitles a prisoner to release on bail (not dismissal) if held for more than 180 days before trial and, thus, violation thereof does not establish abridgement of Petitioner's Federal Sixth Amendment right to a speedy trial. *See Wells v. Petsock*, 941 F.2d 253, 256 (3d Cir.1991). Therefore Petitioner has failed to allege facts sufficient to make out a Constitutional claim."); Kim v. Klem, CIV.A. 03-1628, 2003 WL 22204549, at *5 (E.D .Pa. July 31, 2003) ("Initially, it is noted that to the extent petitioner alleges a violation of Pennsylvania Rule of Criminal Procedure 1100 (since renumbered Rule 600) or the

---

[4] Dkt. [3] at 10, ¶ (b) citing Exhibit 5; Dkt. [3] at 39 (which is Exhibit 5, i.e., the letter to trial counsel, citing to Rule 600). In that letter, Petitioner wrote: "As you know my case expires on September 23, 2003. I would like for you to file the proper paperwork to have my case dismissed. I understand that you has [sic] prior obligations during trial week this month, but I never signed a continuance. Therefore, my Rule 600 and Rule 1100 should still expire on the 23rd." Dkt. [3] at 39.

[5] "Former Rule 1100, Pennsylvania's speedy trial rule, was re-codified as Pa. R.Crim. P. 600 as of Apr. 1, 2001. See Commonwealth v. Prout, 814 A.2d 693, 694 n. 1 (Pa.Super.2002)." Kim v. Klem, 2003 WL 22204549, at *5 n. 11 (E.D.Pa. July 31, 2003)

Pennsylvania Constitution, the Court may not address the merits of his claim because it is not cognizable in a habeas petition."); Blackwell v.. Larkins, CIV. A. 97-CV-1999, 1998 WL 401752, at *5 (E.D.Pa. July 6, 1998)("The contention that the petitioner has been denied a speedy trial under PA. R. CRIM. P. 1100 does not state a claim under the United States Constitution."); Cooper v. Vaughn, CIV. A. 90-0652, 1993 WL 264699, at *3 (E.D. Pa. June 30, 1993)("Claims which arise under Rule 1100 are, therefore, state law claims; as such, they provide no ground for federal habeas relief."). See also Asque v. Commonwealth Allegheny County, NO. CIV A 07-294, 2007 WL 1247051, at *2 ( W.D.Pa. April 27, 2007)("even if we assumed that Rule 600 were in fact violated, such a violation of a state rule of criminal procedure simply does not establish a violation of Plaintiff's federal rights").  Hence, we find the federal constitutional issue of a speedy trial (as distinct from compliance with the Pennsylvania Rules of Criminal Procedure)  procedurally defaulted as having never been raised in the state courts and such a claim could not be raised now given that Petitioner would be time barred from now raising such an issue in a second PCRA  petition.  See, e.g., Tome v. Stickman, 167 Fed.Appx. 320, 322 (3d Cir. 2006)(affirming the District Court where "The District Court ruled that Tome's federal ineffective assistance of trial counsel claim was never exhausted in the state appellate courts. Because such a claim could now be raised only in a second PCRA petition and such a petition would be barred by the PCRA's one-year statute of limitations, the District Court ruled that the claim was procedurally defaulted."); Frazier v. Wilson, NO. CIV.A.06-3141, 2008 WL 1848093, at *15 (E.D.Pa., April 24, 2008 ("Because Petitioner would be unable to present these claims to the state courts in a PCRA petition because it would be untimely, they are procedurally defaulted.").   Hence, Ground Four affords Petitioner no relief.

Ground Five claims that trial/appellate counsel was ineffective for failing to interview certain witnesses and/or presenting certain witnesses and failed to investigate evidence that Darius Johnson was the owner of the gun used to shoot the victim. Again, this specific claim of trial/appellate counsel's ineffectiveness was never raised during the direct appeal process, nor was it raised in the PCRA amended petition. Hence, the only surviving claim would be one that PCRA counsel was ineffective for failing to raise these particular issues of trial/appellate counsel's ineffectiveness and, as we now know, such a claim of PCRA counsel's ineffectiveness fails to provide any ground for relief. As such, this issue fails.

Ground Six is brought as a direct claim that the trial court violated Petitioner's equal protection rights and substantive due process rights to a fair trial when the trial court admitted Commonwealth Exhibits CE7 and CE8, i.e., the two photographs, and by permitting Ms. Iacaponi to testify that she sold the gun used to shoot the victim in the Hunter's Ridge Projects some six months prior to the shooting because Petitioner contends such testimony was irrelevant. The trial court addressed these issues in its Opinion in Support of Jury Verdict, dated March 23, 2004. Dkt. [14-3] at 6 to 25. The Trial court found that the two photographs were relevant to show that there were no signs of a struggle as Petitioner apparently maintained there had been, and which alleged struggle necessitated Petitioner's acting in self defense by firing the gun. Dkt. [14-3] at 18 ("two of the Commonwealth's exhibits, photographs of the crime scenes showed no signs of an altercation in the general area, where according to the Defendant, an altercation took place.").

As to the testimony of Ms. Iacaponi, the Trial Court rejected Petitioner's contention that it was error for the Court to admit the testimony. The Trial Court reasoned that

With regard to this issue, and in light of the Defendant's allegations that he was acting in self-defense, such evidence was clearly relevant. Evidence which proved that the Defendant, and not the victim, was in possession of the murder weapon is not only relevant but vital to the Commonwealth so that it can meet its heavy burden of proving the guilt of the Defendant beyond a reasonable doubt. The Commonwealth had to be given an opportunity to prove that the Defendant possessed the weapon before the incident took place, thereby negating any evidence or inference that it was the Victim who possessed the weapon when he entered the apartment.

Dkt. [14-3] at 20. Petitioner has not carried his burden to show that the Trial Court's disposition of these two claims was contrary to or an unreasonable application of Supreme Court precedent.

To the extent that Petitioner argues there is no way that a juror could have inferred a lack of struggle from the two photographs, Petitioner has failed to carry his burden. Those photographs are not in the record before this court and given the presumption of correctness of factual findings and presumption of constitutionality of the conviction, Petitioner has failed to carry his burden to show that the photos could not permit a reasonable juror to conclude that no struggle ensued in the area. Moreover, Petitioner himself conceded that the photographs depicted not only the body but also the TV stand next to the body, which TV stand was apparently undisturbed and upright. Dkt. [18] at 2.

To the extent Petitioner argues that Ms. Iacaponi's testimony regarding her sale of the gun in the projects six months prior to the murder was irrelevant, the Court is not convinced. Even if this Court were to engage in a *de novo* review of this issue, it would conclude that the testimony was relevant, especially given that Petitioner himself claims there was evidence that Darius Johnson was owner of the gun, Dkt. [3] at 11 to 12, and that Darius Johnson was a friend of Petitioners. Clearly, the testimony of Ms. Iacaponi makes it more possible that the gun was in possession of the Petitioner prior to the start of the incident rather than only after the incident

began, as Petitioner contends was the case.  And this is so, even if it is true that Petitioner did not live at the Hunters' Ridge housing project.

As none of the issues merits the grant of habeas relief, that the petition is properly denied.

**Certificate of Appealability**

A certificate of appealability is required by  28 U.S.C. § 2253(c) before a petitioner who has been denied relief may appeal to a court of appeals.  As amended by AEDPA, section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  In order to make a  "substantial showing of the denial  `of a constitutional right," the habeas "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  It does not appear that reasonable jurists would find the denial of Petitioner's habeas relief based on the foregoing grounds to be debatable or wrong.  Accordingly, a certificate of appealability is denied.

SO ORDERED, this 22nd day of September, 2008.

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

cc:   Torey Vaughn Peterson
      FG-9020
      SCI Cresson
      P.O. Box A
      Cresson, PA 16699-0001

      All Counsel of Record via CM-ECF